FILED
02 SEP -3 PM 4: 25
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES A. WILLIAMS and WILLIAMS PETROLEUM, INC., | } } } | |
| Plaintiffs, | } } | |
| v. | } } | CASE NO. CV 01-B-2788-S |
| WILLIAMS TRAVELCENTERS, INC. and THE WILLIAMS COMPANIES, INC., | } } } } | |
| Defendants. | } } | |

ENTERED
SEP -3 2002

## MEMORANDUM OPINION

The court has for consideration Defendants' Motion to Disqualify The Law Firm of Burr & Forman, pursuant to Rule 1.7(a) of the Alabama Rules of Professional Conduct. Both parties briefed the issues and the court heard oral argument on the motion.

At oral argument defendants withdrew any claim that the law firm of Burr & Forman LLP had received any confidential information concerning defendants or information that could be used to their disadvantage in the present suit. The withdrawal of this claim is accepted by the court. Accordingly, the court will grant Plaintiffs' Motion to Strike all references in defendants' motion, brief, and paragraph 18 in the Affidavit of Diane Hall.

The important facts in this case are not disputed in any material way. Burr & Forman LLP has been performing trademark and unfair competition work for the plaintiffs since 1990. The plaintiffs engaged Burr & Forman LLP to represent it with respect to trademark infringement claims against defendants several months before this case was filed on November 1, 2001. Burr & Forman LLP performed the research and investigation concerning the claims in



this action. The trademark infringement claims are being handled by J. Ross Forman III, H. Graham Beene, and Howard P. Walthall, Jr. of Burr & Forman LLP.

On Wednesday, October 24, 2001, Harlan F. Winn III of Burr & Forman LLP was contacted by J. Diane Hall, an attorney with The Williams Companies, Inc., who asked Mr. Winn to represent Thermogas Company, Inc. and its employee, Larry Parker, in a personal injury action filed by Elton Eric Fulton in the Circuit Court of St. Clair County (Pell City Division), styled *Elton Eric Fulton v. Thermogas Company, Inc. and Larry Parker*, Civil Action No. 99-293, which was set for trial November 5, 2002. At the time the *Fulton* case was filed in 1999, Thermogas Company, Inc. was a wholly owned subsidiary of Williams Energy Services, Inc., which was a wholly owned subsidiary of The Williams Companies, Inc. However, shortly after the suit was filed, Williams Energy Services, Inc. sold Thermogas to an unrelated party but retained responsibility for the *Fulton* litigation. Ms. Hall advised Mr. Winn that the *Fulton* case was set for trial on November 5, 2001, and that the case would not be continued.

Mr. Winn advised Ms. Hall that he was interested in representing Thermogas and Larry Parker in the *Fulton* litigation if Burr & Forman LLP had no conflicts of interest. Ms. Hall advised Mr. Winn that she would send him a list of companies in addition to Thermogas and Larry Parker which she wanted included in the conflict check. Nevertheless, because of the November 5, 2001, trial setting, Ms. Hall requested that Mr. Winn begin preparing for the trial while the conflict check was being performed. Mr. Winn and Ms. Hall agreed that he would begin work while the conflict check was being run, but if a conflict was discovered, Burr & Forman LLP could continue with the adverse representation and Ms. Hall would decide whether to terminate Burr & Forman LLP or seek conflict waivers. Based on this understanding, Ms.

Hall had the *Fulton* litigation file transferred from Thermogas's previous counsel, Clark & Scott, to Mr. Winn on October 24, 2001.

The afternoon of October 24, 2001, Mr. Winn received a fax from Ms. Hall with a list of 543 companies Ms. Hall wanted included in the conflict check. The large number of companies increased the time for the conflict check to be completed. While this conflict check was being conducted, Mr. Winn began preparation for the trial of the *Fulton* case. On Monday, October 29, 2001, Ms. Hall informed Mr. Winn that she had settled the *Fulton* case pending approval by the parties. On Tuesday, October 30, 2001, Ms. Hall contacted Mr. Winn and confirmed that the *Fulton* case had settled. The settlement figure established what Burr & Forman LLP was to be paid since it was working on a reverse contingency fee basis.

On Wednesday, October 31, 2001, Mr. Winn was informed by Graham Beene that Burr & Forman LLP had a conflict in representing The Williams Companies since he and Ross Forman were about to file a trademark infringement case against Williams TravelCenters, Inc. and The Williams Companies, Inc. Mr. Winn called Ms. Hall on October 31, 2001, to inform her of the results of the conflict check, but Ms. Hall did not answer her telephone. Mr. Winn left a voice message asking her to return his call. On November 5, 2001, Mr. Winn again tried to contact Ms. Hall but was unsuccessful. He left another message for her to call him. On Wednesday, November 7, 2001, Mr. Winn again called Ms. Hall, but again she did not answer her phone. He left another message asking her to please return his call. Later on November 7, 2001, Ms. Hall returned Mr. Winn's call, but he was out of the office. She left a voice message apologizing for not returning his calls, and indicated that since the *Fulton* case had settled she had been busy working on other matters.

On Friday, November 9, 2001, Mr. Winn and Ms. Hall talked by telephone and the results of the conflict check were discussed. Ms. Hall requested that Mr. Winn withdraw from representing Thermogas and Larry Parker in the *Fulton* case, and Mr. Winn told her that there was no case to withdraw from, since the *Fulton* case had been dismissed pursuant to the settlement she had made.

Defendants then filed their Motion to Disqualify Burr & Forman LLP for allegedly violating Rule 1.7(a) of the Alabama Rules of Professional Conduct, claiming that Burr & Forman LLP's representation of plaintiffs in this case is directly adverse to other clients of Burr & Forman LLP, The Williams Companies and Williams TravelCenters, Inc.

Plaintiffs have offered several reasons why Defendants' Motion to Disqualify should be denied. First, plaintiffs assert that Burr & Forman LLP did not represent The Williams Companies, Inc. or Williams TravelCenters, Inc. in the *Fulton* case, since Thermogas was no longer owned by any company related to The Williams Companies when Mr. Winn was contacted. Second, plaintiffs argue that the *Fulton* case was resolved prior to the commencement of this trademark suit, so Rule 1.9 rather than Rule 1.7(a) is controlling. Third, plaintiffs argue that the defendants consented to or waived any conflict. Fourth, plaintiffs note that the Alabama Supreme Court has counseled against rigid application of the Alabama Rules of Professional Conduct and has held that a common sense approach should be used which requires examination of the facts in each case and weighs the prejudices and harm which will result by strict application of the Rules. *See, Ex parte AmSouth Bank*, 589 So. 2d 715 (Ala. 1991). Plaintiffs argue that The Williams Companies, Inc. and Williams TravelCenters, Inc. will not suffer any

4

prejudice if Burr & Forman LLP is allowed to continue representing the plaintiffs in this case, while plaintiffs will be greatly prejudiced if Burr & Forman LLP is disqualified.

While the court believes that the plaintiffs' argument that defendants were not clients in the *Fulton* case is probably correct, for purposes of deciding Defendants' Motion to Disqualify, the court will assume that the defendants in this action were clients of Burr & Forman LLP in the *Fulton* case. Nevertheless, the court agrees with plaintiffs' other arguments, and Defendants' Motion to Disqualify Burr & Forman LLP is due to be denied. In fact, as the court stated to counsel during the hearing on the Motion to Disqualify, the court is somewhat dismayed that defendants would file a Motion to Disqualify in view of the facts in this case.

Application of Rule 1.7(a), as asserted by defendants, would result in more harm than good in this case. The Alabama Supreme Court in *Ex parte AmSouth Bank*, 589 So. 2d 715 (Ala. 1991) counseled against such an application, and held that a "common sense" approach should be used for resolving questions under the Rules of Professional Conduct, especially questions concerning disqualification of counsel. *Id* at 722. The court cited with approval the observation of the United States District Court for the Southern District of New York which stated:

> Our Court of Appeals has adopted a cautious approach to questions of disqualification, examining the problems sought to be met by the [ABA Code of Professional Responsibility], the realities of those problems in practice, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits.

*Id*. at 722.

In this case, more harm than good would result from disqualification of Burr & Forman LLP. The *Fulton* case was totally unrelated to this trademark action, and Burr & Forman LLP

has obtained no confidential information which would be adverse to defendants in this trademark action.[1] Therefore, defendants will not be prejudiced by Burr & Forman LLP continuing to represent the plaintiffs. The *Fulton* case was basically resolved before this action was filed, and in essence, defendants created the conflict by requesting that, due to the emergency situation, Burr & Forman LLP move forward with the defense in *Fulton* while the lengthy conflict check requested was being undertaken. Since the *Fulton* case was settled on October 29, 2001, any conflict lasted only four days. On the other hand, Burr & Forman LLP has been representing the plaintiffs in trademark matters since 1990. The plaintiffs would certainly be greatly prejudiced by being forced to obtain other counsel to represent them in this case. In considering the prejudices and hardships which a disqualification would work in this case and the reasons for Rule 1.7(a), the court finds that no prejudice or hardship will be worked on defendants by allowing Burr & Forman LLP to continue representing the plaintiffs, while a great prejudice will be worked if plaintiffs were forced to hire new counsel.

Moreover, defendants impliedly consented to or waived any adverse representation by Burr & Forman LLP, and are estopped from now trying to disqualify Burr & Forman LLP. Ms. Hall's request that Burr & Forman LLP begin representing Thermogas and Larry Parker in

---

[1] In an Affidavit attached to defendants' Reply Memorandum in Support of the Motion to Disqualify, J. Diane Hall, Senior Attorney with The Williams Companies, stated under oath that during the course of representing Thermogas in the *Fulton* litigation, Harlan Winn, attorney at Burr & Forman, became "privy to confidential information such as TWC's corporate structure and subsidiary management, litigation strategy, willingness or unwillingness to be deposed by an adversary, preferred approach to bargaining in settlement discussions, financial resources, and financial ability or inability to withstand extended litigation." Hall Affidavit, ¶ 18. Defendants now concede that this statement has no basis in fact. Unless Ms. Hall signed her Affidavit without reading it, she signed an Affidavit under oath which contained a serous and false allegation.

the *Fulton* case, before the conflict check could be completed, and agreement that, if any conflict was discovered, Burr & Forman LLP could continue with the adverse representation, can only be interpreted as a consent to or a waiver of any conflict discovered. Defendants were facing an imminent trial date when they requested Burr & Forman LLP to begin work on the *Fulton* case prior to the conflict check being completed. Defendants knew that a conflict might arise. Defendants agreed that if a conflict was discovered Burr & Forman LLP could continue with the adverse relationship, and defendants would decide whether to terminate Burr & Forman LLP or seek consent from the adverse party. Obviously, Burr & Forman LLP reasonably relied on this representation, and it would be unfair and unjust if defendants could now back out of their agreement and disqualify plaintiffs' counsel. Accordingly, the court finds that defendants consented to and waived any adverse representation by Burr & Forman LLP, and are estopped from asserting Rule 1.7(a) to disqualify Burr & Forman LLP.[2]

The *Fulton* case was resolved by settlement only four days after Mr. Winn was initially contacted by Ms. Hall. Thus, the *Fulton* case was resolved before any conflict check could be completed and before this action was filed. This is much the same situation as the Alabama Supreme Court considered in *Ex parte AmSouth Bank*, supra. Any conflict was quickly resolved. Burr & Forman LLP received no confidential information concerning defendants, or any information which could be used to defendants' disadvantage in this case. Any conflict was caused by defendants' emergency request that Burr & Forman LLP begin work before the conflict check could be completed. Under these facts, as in *AmSouth Bank,* Rule 1.9 of the

---

[2]The court would emphasize that it agrees with plaintiffs that defendants were probably not Burr & Forman's true clients in the *Fulton* case.

Alabama Rules of Professional Conduct rather than Rule 1.7 determines whether Burr & Forman LLP should be disqualified. It is undisputed that the *Fulton* case and this case are not related in any manner, and that Burr & Forman LLP has received no information from defendants which could be used to their disadvantage in this case. Accordingly, Burr & Forman LLP is not disqualified from continuing to represent the plaintiffs under Rule 1.9.

For each of the forgoing reasons, Defendants' Motion to Disqualify Burr & Forman LLP is due to be denied.

**DONE** this ___3rd___ day of September, 2002.

_____
**SHARON LOVELACE BLACKBURN**
United States District Judge